Russell S. Thompson, IV (Cal. Bar No. 325944)
Thompson Consumer Law Group
11445 E Via Linda, Ste 2 #492
Scottsdale, AZ 85259
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
EUREKA DIVISION

NANCY RESNICK, BILL HASSLER and ELIZABETH HASSLER,

Plaintiffs,

vs.

TOYOTA MOTOR SALES USA, INC.,

Defendant.

Case No.

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMANDED**

**NATURE OF THE ACTION**

1. Plaintiffs Nancy Resnick ("Nancy"), Bill Hassler ("Bill"), and Elizabeth Hassler ("Elizabeth") (collectively, "Plaintiffs") bring this action against Defendant Toyota Motor Sales, USA, Inc. ("Defendant") pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 et seq. ("Song-Beverly"), and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §2301 et. seq.

**JURISDICTION AND VENUE**

2. Jurisdiction exists under 28 U.S.C. § 1331 because this matter involves a federal question pursuant to the MMWA, and 28 U.S.C. § 1332 because the parties have complete

diversity and the amount in controversy exceeds $75,000. Jurisdiction is also conferred under 15 U.S.C. § 2310(d) because the amount in controversy exceeds $50,000.00. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper before this Court, where the acts and transactions giving rise to Plaintiffs' action occurred in this district, where Defendant transacts business in this district, and where Plaintiffs purchased the vehicle at issue in this district.

## INTRADISTRICT ASSIGNMENT

4. Pursuant to Civil L.R. 3-2(c)-(d), assignment to the Eureka Division is proper because Plaintiffs reside in, and the repairs to the vehicle occurred in, Humboldt County.

## PARTIES

5. Elizabeth is a natural person that at all relevant times resided in Arcata, California.

6. Bill is a natural person that at all relevant times resided in McKinleyville, California.

7. Nancy is a natural person that at all relevant times resided in McKinleyville, California.

8. Bill is Elizabeth's father

9. Nancy is Elizabeth's mother.

10. Defendant is a California corporation engaged in the manufacture, sale, and distribution of vehicles and related equipment and services in the State of California.

- 2 -
COMPLAINT FOR DAMAGES

11.	Defendant is engaged in the business of making a consumer product directly or indirectly to consumers.

12.	Pursuant to Song-Beverly, Defendant is a "manufacturer," Cal. Civ. Code § 1791(j), and/or a "distributor," Cal. Civ. Code § 1791(e).

13.	Defendant is a "supplier" as defined by the MMWA, 15 U.S.C. § 2301(4).

14.	Defendant is a "warrantor" as defined by the MMWA, 15 U.S.C. § 2301(5).

## FACTUAL ALLEGATIONS

15.	Elizabeth has cerebral palsy.

16.	Due to her condition, Elizabeth needs personal care attendants to assist her in the community.

17.	Elizabeth is a full-time power chair user with significant positioning needs.

18.	Elizabeth cannot transfer out of her wheelchair into another seat without taking medical risks.

19.	Elizabeth has significant visual-spatial impairment and cannot remain positioned in her specialized wheelchair without frequent assistance due to high muscle tone caused by cerebral palsy.

20.	Elizabeth cannot safely travel in an ordinary passenger vehicle.

21.	On or about May 29, 2025, Plaintiffs purchased a 2024 Toyota Sienna XSE adaptive mobility van, VIN 5TDDRKEC3RS206185 ("the Sienna"), from SacVans Mobility, Inc. (SacMobility") in Sacramento, California.

COMPLAINT FOR DAMAGES

22. Plaintiffs purchased the Sienna for Elizabeth's own personal, family, or household purposes.

23. Plaintiffs purchased the Sienna to assist Elizabeth with her disability, assist in the mitigation or treatment of her injury or disease, and/or to assist or affect or replace the structure or function of her body.

24. Elizabeth is the intended and primary beneficiary of the Sienna's purchase.

25. Bill and Nancy are responsible for the burdens of vehicle ownership, like registering, insuring and maintaining the Sienna.

26. The Sienna is an "assistive device" as defined by Song-Beverly, Cal. Civ. § 1791(p).

27. Plaintiffs are "buyers" as defined by Song-Beverly, Cal. Civ. Code § 1791(b).

28. Plaintiffs are "consumers" as defined by the MMWA, 15 U.S.C. § 2301(3).

29. The Sienna is a "consumer good" as defined by Song Beverly, Cal. Civ. Code § 1791(a).

30. The Sienna is a "consumer product" as defined by the MMWA, 15 U.S.C. § 2301(1).

31. The Sienna's price totaled at least ninety-four thousand six hundred sixty-one dollars and twenty-five cents ($94,661.25), excluding collateral charges.

32. In consideration for the Sienna's purchase, Defendant issued and supplied to Plaintiffs its written Limited Warranty, which included a three (3) year thirty-six thousand

COMPLAINT FOR DAMAGES

(36,000) mile "basic" warranty, as well as other warranties fully outlined in the warranty booklet.

33.    Upon information and belief, the Sienna was sold to Braun Holdings, Inc. ("BraunAbility"), as part of Defendant's "Toyota Mobility" program, prior to its first retail delivery.

34.    BraunAbility manufactures and supplies assistive devices, including but not limited to wheelchair accessible vans like the Sienna.

35.    The Sienna's assistive device equipment was installed and integrated by BraunAbility.

36.    Upon information and belief, Defendant provides BraunAbility material support with regard to assistive device modifications such as the Sienna's.

37.    BraunAbility supplies its products through a network of authorized dealers.

38.    Plaintiffs could not have purchased the Sienna from BraunAbility directly.

39.    BraunAbility is a "manufacturer" as defined by Song-Beverly, Cal. Civ. Code § 1791(j).

40.    BraunAbility's assistive device modifications are manufacturer installed.

41.    BraunAbility's assistive device modifications were not items installed by SacMobility or any another dealer.

42.    BraunAbility's assistive device and modifications made to accommodate the assistive device were not items installed by Plaintiffs.

43. BraunAbility's assistive device modifications were central to the Sienna's use and value.

44. Without BraunAbility's assistive device modifications, the Sienna is just an ordinary passenger van.

45. Without BraunAbility's assistive device modifications, Elizabeth could not use the Sienna.

46. Without BraunAbility's assistive device modifications, Plaintiffs would not have purchased the Sienna.

47. Without BraunAbility's assistive device modifications, the Sienna would not be part of Toyota Mobility.

48. According to Defendant's website:

> The mission of Toyota Mobility is to provide solutions that serve our customers' mobility needs and enhance their quality of life. Our goal is to offer a broad selection of the best mobility solutions on the market: more options and less compromise. We've been part of the mobility community since introducing the Tundra pickup with a wheelchair lift in 2001—and our commitment continues today with an expanded lineup of vehicles equipped with mobility assistance features. We partner with the leading mobility conversion companies to provide the highest quality mobility solutions.

https://www.toyotamobility.com/.

49. According to its website, Defendant's mobility program is "designed to address the transportation needs of people with a disability or who have a family member with a mobility issue."

50. Defendant, through its mobility program, approves assistive device manufacturers.

COMPLAINT FOR DAMAGES

51.    Defendant, through its mobility program, advertises assistive device conversions.

52.    Defendant, through its mobility program, coordinates assistive device installation.

53.    Defendant, through its mobility program, subsidizes assistive device conversions.

54.    Defendant, through its mobility program, integrates the ordering process for assistive device manufacturers.

55.    Defendant, through its mobility program, represents that assistive devices are compatible with its products.

56.    Defendant, through its mobility program, treats assistive device wheelchair accessible mobility vans as part of its branded mobility ecosystem.

57.    As such, the Sienna is a fully "Toyota Mobility" sponsored integrated assistive device/wheelchair accessible vehicle, wherein Defendant expected the modification, structured a program around it, sold it directly into the converted vehicle pipeline, and commercially benefited from the completed mobility vehicle ecosystem.

58.    Defendant advertises mobility conversions on its websites.

59.    Upon information and belief, Defendant has mobility brochures, approved-converter agreements, reimbursement materials, and/or dealer mobility training.

60.    Defendant's mobility program uses "factory authorized" language.

61.    Defendant's mobility program uses warranty coordination language.

COMPLAINT FOR DAMAGES

62.    Defendant's mobility program uses representations that conversion preserves OEM coverage.

63.    Defendant's mobility program takes other actions to suggest it expects disabled consumers to rely on its brand to induce purchases of such conversions.

64.    Upon information and belief, Defendant participated in "assembling" or "producing" the Sienna by channeling it through its mobility program, designing compatibility, facilitating the conversion pipeline, and/or continuing warranty participation after conversion.

65.    On or about April 30, 2025, Plaintiffs took ownership of the Sienna.

66.    Shortly thereafter, while Elizabeth was on a road trip in Oregon to see her brother perform in a play, the Sienna experienced defects and/or nonconformities within its powertrain.

67.    The Sienna's engine started smoking, stranding Plaintiff and her attendant in a remote area, approximately forty miles from the nearest town.

68.    Elizabeth contacted a tow service for help, but the tow truck driver was unable to provide the specialized support she needed.

69.    Non-emergency medical support was not available to Elizabeth due to the lack of advance notice.

70.    After several hours, Elizabeth was able to get in contact with the local fire department.

COMPLAINT FOR DAMAGES

71.    Fortunately, the assistant fire chief had a personal contact for non-emergency medical transportation.

72.    The assistant fire chief drove out to Elizabeth's location with some of his crew to meet Elizabeth and her attendant.

73.    The assistant fire chief then stayed there with them until transportation arrived.

74.    Elizabeth was stranded on the side of the road, without access to a bathroom, for hours.

75.    Elizabeth was extremely stressed and in increased pain from being forced to wait at the side of the road.

76.    By the time transportation arrived and finally got her to a hotel, over five hours had elapsed.

77.    To get back home to California, Bill had to travel to Oregon in their old backup wheelchair van to rescue her.

78.    The defects that stranded Elizabeth necessitated a full engine replacement.

79.    This repair took over forty days.

80.    The Sienna also experienced a persistent vibration and rough and "chunky" transaxle/transmission operation.

81.    For this defect/nonconformity, the Sienna was out of service at Defendant's repair facility from November 20, 2025, through July 3, 2026.

82.    For this defect/nonconformity, the Sienna was out of service at Defendant's repair facility for over two hundred twenty days.

COMPLAINT FOR DAMAGES

83. The Sienna's defects and/or nonconformities substantially impair its use, value, and/or safety to Plaintiffs.

84. The Sienna's defects and/or nonconformities manifested during the warranty period and violate Defendant's express and written warranties.

85. These defects and/or nonconformities existed at the time of delivery and violate Defendant's implied warranty of merchantability to Plaintiffs.

86. These defects and/or nonconformities are within the Sienna's OEM equipment.

87. Plaintiffs delivered the Sienna to Defendant, through its authorized dealership network, to repair these defects and/or nonconformities.

88. These defects and/or nonconformities shake Plaintiffs' confidence in the Sienna, thereby entirely depriving Plaintiffs of the Sienna's use as an assistive device.

89. These defects and/or nonconformities render the Sienna unreliable.

90. These defects and/or nonconformities in the Sienna render it unmerchantable.

91. Plaintiffs provided Defendant, through its authorized dealership network, sufficient opportunities to repair the Sienna.

92. Defendant was unable to and/or has failed to repair the defects and/or nonconformities, as provided in Defendant's warranty, despite being given a reasonable number of attempts/reasonable opportunity to do so.

93. As a result of Defendant's ineffective repair attempts through its authorized dealership network, the Sienna cannot be utilized for personal, family, and household use as intended by Plaintiffs at the time of purchase.

- 10 -
COMPLAINT FOR DAMAGES

94. Because of the Sienna's defects and/or nonconformities, and Defendant's ineffective repair attempts through its authorized dealership network, Plaintiffs cannot confidently, safely, or reliably use the Sienna as an assistive device as intended at purchase.

95. Because of the Sienna's defects and/or nonconformities, and Defendant's ineffective repair attempts through its authorized dealership network, Plaintiffs cannot confidently, safely, or reliably travel in the Sienna as intended at the time of purchase.

96. Plaintiffs have justifiably lost confidence in the Sienna's safety and reliability generally.

97. As a result of Defendant's ineffective repair attempts through its authorized dealership network, Defendant's written warranty failed of its essential purpose.

98. The defects could not reasonably have been discovered by Plaintiffs prior to acceptance of the Sienna.

99. Plaintiffs have been and will continue to be financially damaged due to Defendant's intentional, reckless, wanton, and negligent failure to comply with the provisions of its express, written, and implied warranties, and its failure to provide Plaintiffs with a merchantable Sienna.

100. On or about November 26, 2025, Plaintiffs sent Defendant written correspondence advising it of the Sienna's defects and nonconformities.

101. Said correspondence informed Defendant that the Sienna's repair history had surpassed a reasonable number of attempts and a reasonable opportunity.

COMPLAINT FOR DAMAGES

102. Said correspondence invoked Plaintiffs' statutory rights under Song-Beverly and requested a refund or replacement.

103. Defendant responded on or about February 3, 2026, stating *inter alia* that it did not believe that it had failed to repair the Sienna to conform to its written warranties and that it was unable to offer any assistance.

104. Defendant stated this even though at the time of its response, the Sienna was at Defendant's authorized repair facility pending repair.

105. Defendant's refusal to repurchase the Sienna despite its intended purpose, unreasonable repair history, and current defects was intentional.

106. Defendant knew of its obligation to repurchase the Sienna at that time and intentionally declined to do so.

107. Defendant's decision not to repurchase the Sienna was not made in good faith.

108. Defendant's decision not to repurchase the Sienna was unreasonable.

109. Defendant was aware of the Sienna's repair history and current defects at the time it decided not to repurchase the Sienna.

110. In its response, Defendant "remind[ed]" Plaintiffs about its informal dispute resolution program through the National Center for Dispute Settlement/California Dispute Settlement Program ("NCDS").

111. Upon information and belief, Defendant derives a substantial benefit from directing warranty disputes into NCDS's program.

- 12 -
COMPLAINT FOR DAMAGES

112. Defendant funds its participation in the NCDS program and is a repeat participant.

113. Still, Plaintiffs dutifully applied to the NCDS program on or about February 6, 2026, and met all preconditions for participation.

114. In their application, Plaintiffs sought remedies under Song-Beverly.

115. In their application, Plaintiffs identified many material facts, including but not limited to the fact that as of that date, the Sienna was still unrepaired.

116. In their application, Plaintiffs also stated that as of that date, the Sienna had been out of service for one hundred twenty-one (121) days.

117. In its response to Plaintiffs' application, Defendant admitted the Sienna was still unrepaired.

118. In its response to Plaintiffs' application, Defendant admitted the Sienna's use, value, or safety was substantially impaired.

119. In its response to Plaintiffs' application, Defendant admitted that Plaintiffs' application accurately stated the number of days the Seinna had been out of service.

120. Still, in its response, Defendant again denied Plaintiffs' right to relief, stating *inter alia* "a repurchase would be inappropriate."

121. On or about March 20, 2026, NCDS provided notice to both parties that in this informal dispute process Plaintiffs were awarded a repurchase but denied incidental expenses actually incurred.

122. NCDS's notice did not contain repurchase terms.

COMPLAINT FOR DAMAGES

123. Plaintiffs subsequently requested NCDS provide repurchase terms.

124. On or about March 23, 2026, NCDS replied, stating it "cannot provide clarification on the exact amount of the buyback" but that if Plaintiffs accepted then Defendant would contact them to discuss the "financial aspects of the decision."

125. Shortly thereafter, Plaintiffs provided their conditional acceptance.

126. On or about March 30, 2026, NCDS acknowledged Plaintiffs' conditional acceptance and advised Plaintiffs that "a Toyota representative will contact you within the upcoming week to assist in providing the awarded resolution and to discuss the financial aspects of the decision" and that it would "continue to monitor Toyota's compliance."

127. On or about April 2, 2026, Plaintiffs contacted NCDS to advise that they had not yet received any communication from Defendant.

128. That same day, NCDS responded that it would "reach out" to Defendant.

129. On or about April 6, 2026, Plaintiffs again contacted NCDS to advise they had still not been contacted by Defendant.

130. NCDS responded on or about April 7, 2026, stating it would reach out to Defendant again.

131. On or about April 8, 2026, NCDS contacted Plaintiffs, stating: "The customer should expect to hear from someone at Braunability [sic] this week regarding their repurchase offer."

132. Defendant never argued at the arbitration that BraunAbility was a responsible party.

- 14 -
COMPLAINT FOR DAMAGES

133.   Upon information and belief, Defendant attempted to pass its own repurchase obligation off on to its partner BraunAbility.

134.   If true, such an action would be:

   a)  Pursuant to an indemnification agreement;

   b)  With knowledge the award was against it and not BraunAbility;

   c)  Intentional;

   d)  Not in good faith; and,

   e)  Unreasonable.

135.   Upon information and belief, and shortly thereafter, BraunAbility responded to Defendant and declined to repurchase the Sienna.

136.   Upon information and belief, BraunAbility reminded Defendant that the Sienna's defects were OEM responsibility.

137.   On or about April 10, 2026, Plaintiffs contacted NCDS to advise they still had not received communication from Defendant (or BraunAbility) about the repurchase.

138.   On or about April 13, 2026, NCDS responded that it had "reached out" to Defendant again.

139.   On or about April 15, 2026, Plaintiffs contacted NCDS to again advise they had not received communication from Defendant (or BraunAbility) about the repurchase.

140.   On or about April 16, 2026, NCDS responded that it had forwarded Plaintiffs' message to Defendant's "team" and requested a status update.

COMPLAINT FOR DAMAGES

141.    On or about April 17, 2026, Plaintiffs again contacted NCDS to advise they had not received communication from Defendant (or BraunAbility) about the repurchase.

142.    On or about April 22, 2026, Plaintiffs again contacted NCDS to advise they had not received communication from Defendant (or BraunAbility) about the repurchase.

143.    Defendant did not take any action to comply with the award until April 24, 2026, when it finally contacted Plaintiffs to request purchase information.

144.    Plaintiffs immediately responded, reminding Defendant that the purchase documents had already been provided through the informal dispute process and that the Sienna had no lien.

145.    These purchase documents state ninety-four thousand six hundred sixty-one dollars twenty-five cents ($94,661.25) was the actual price paid or payable for the Sienna.

146.    On or about April 27, 2026, Defendant provided repurchase terms, stating it would refund to Plaintiffs forty-four thousand one hundred thirteen dollars thirty cents ($44,113.30).

147.    The amount Defendant was willing to refund was less than half the price of the Sienna.

148.    Defendant never argued at the arbitration that it was only responsible for less than half the Sienna's cost.

149.    Defendant's decision to provide repurchase terms of less than half the Sienna's cost was intentional.

- 16 -
COMPLAINT FOR DAMAGES

150. Defendant's decision to provide repurchase terms of less than half the Sienna's cost was with knowledge of the Sienna's full purchase price.

151. Defendant's decision to provide repurchase terms of less than half the Sienna's cost was unreasonable.

152. Defendant's decision to provide repurchase terms of less than half the Sienna's cost was not made in good faith.

153. Defendant knew or should have known Plaintiffs could not replace the Sienna with the amount Defendant was willing to refund.

154. Defendant knew or should have known it would have been able to resell the Sienna for substantially more than it was willing to refund.

155. Defendant knew or should have known that under the refund scheme it had proposed, Defendant would be unjustly enriched in the amount of the cost of the conversion, approximately $49,615.

156.  On or about April 27, 2026, Plaintiffs contacted NCDS to seek clarification of the award and whether the arbitrator intended Defendant reimburse less than half the Sienna's cost.

157. On or about April 30, 2026, NCDS acknowledged receipt of Plaintiffs' request for clarification.

158. Said correspondence further stated Defendant had ten days to respond to Plaintiffs' clarification request and that the arbitrator would issue "a final determination" upon receipt of Defendant's response or the expiration of the response period.

- 17 -
COMPLAINT FOR DAMAGES

159. Plaintiffs' never received notice that Defendant responded to Plaintiffs' request for clarification.

160. Upon information and belief, Defendant never responded to Plaintiffs' request for clarification.

161. On or about May 28, 2026, NCDS provided the arbitrator's clarification order.

162. Said order did not state that Defendant had ever responded to Plaintiffs' request for clarification.

163. Said order presented the question: "Does the arbitrator view Toyota's repurchase offer for $44,113.30 to be compliant with the award?"

164. Said order further stated: "The Award was for the Manufacturer to repurchase the vehicle due to the Manufacturer defects that had risen while in the Customer's possession. The California Lemon Law statutes were met for the repurchase of the vehicle as it was delivered from the factory. Any modifications to the vehicle are not the responsibility of the Manufacturer as established in the Manufacturer's Warranty."

165. Had Defendant argued at the arbitration that it was only responsible for less than half the Sienna's cost, Plaintiffs could have responded.

166. Had the arbitrator suggested at the arbitration that Defendant would only be responsible for less than half the Sienna's cost, Plaintiffs could have responded.

167. On or about June 18, 2026, Defendant wrote to NCDS acknowledging that it had "been mandated to Repurchase the subject customer's vehicle."

COMPLAINT FOR DAMAGES

168.   Said correspondence further stated "the customer has not accepted Toyota's Repurchase Offer submitted 4/27/2026. Based on the above information, Toyota is unable to fulfill its obligation to Repurchase the subject customer's vehicle and ask that you please close the corresponding case."

169.   As of the date of the filing of this Complaint, Defendant has never made an offer to repurchase the Sienna in compliance with Song-Beverly. *See* Cal. Civ. Code § 1793.2(d)2)(B) ("[T]he manufacturer shall make restitution in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer.").

170.   As of the date of the filing of this Complaint, Defendant has only provided repurchase terms in a "token attempt" to comply with the order against it.

171.   Defendant's refusal to comply with Song-Beverly was willful.

172.   Plaintiffs have met all preconditions under Song-Beverly and the MMWA to bringing this lawsuit.

173.   On July 13, 2026, Plaintiffs retrieved the Sienna from its latest repair.

- 19 -
COMPLAINT FOR DAMAGES

174.    During their test drive to determine if its prior defect has been repaired, Plaintiffs discovered it had not been, and the Sienna also displayed the message "SRS Airbag System malfunction, visit your dealer," further shaking their confidence in the Sienna.

**COUNT I**
**VIOLATION OF SONG-BEVERLY**
**BREACH OF EXPRESS WARRANTY**

175.    Plaintiffs repeat and re-allege each factual allegation above.

176.    Plaintiffs purchased the Sienna as a used assistive device.

177.    By its express language, Song-Beverly provides the buyers of a used assistive device the same rights and remedies as the buyers of a new assistive device. Cal. Civ. Code § 1793.02(g).

178.    Defendant is responsible for the entire finished Sienna because the defects and nonconformities that render it unusable arise from Defendant's own warranted components.

179.    Defendant cannot limit restitution in a manner that deprives Plaintiffs of equivalent accessible transportation.

180.    Notwithstanding Plaintiffs' entitlement, has failed to promptly make restitution in accordance with Song-Beverly.

181.    By failure of Defendant to remedy the defects as alleged above, or to issue a refund as Plaintiffs have requested, Defendant is in breach of its obligations under Song-Beverly.

182.    Under Song-Beverly, Plaintiffs are entitled to reimbursement of the price paid for the vehicle less that amount directly attributable to use by the Plaintiffs prior to the first presentation of the nonconformities.

COMPLAINT FOR DAMAGES

183.   Plaintiffs are entitled to all incidental, consequential, and general damages resulting from Defendant's failure to comply with its obligations under Song-Beverly.

184.   Plaintiffs are entitled under Song-Beverly to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred in connection with the commencement and prosecution of this action.

185.   Because Defendant willfully violated Song-Beverly, Plaintiffs are entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages for Defendant's willful failure to comply with its responsibilities under Song-Beverly.

WHEREFORE, Plaintiffs pray for judgment against Defendant, as follows:

a. For general, special and actual damages according to proof at trial in excess of $75,000;

b. For rescission of the purchase contract and restitution of all monies expended;

c. For diminution in value;

d. For cover damages;

e. For incidental and consequential damages according to proof at trial;

f. For civil penalty in the amount of two times Plaintiffs' actual damages;

g. For prejudgment interest at the legal rate;

h. For reasonable attorney's fees and costs and expenses of suit; and

i. For such other and further relief as the Court deems just and proper under the circumstances.

COMPLAINT FOR DAMAGES

## COUNT II
## VIOLATION OF SONG-BEVERLY
## BREACH OF IMPLIED WARRANTY

186.   Plaintiffs repeat and re-allege each factual allegation above.

187.   Defendant had reason to know the Sienna's intended purpose at the time of sale.

188.   The Sienna's sale was accompanied by implied warranties provided for under the law.

189.   Among other warranties, the Sienna's sale was accompanied by an implied warranty that the Sienna was merchantable pursuant to Cal. Civ. Code § 1792.

190.   The Sienna was not fit for the ordinary purpose for which such goods are used because it was equipped with one or more defective vehicle systems/components.

191.   The Sienna did not measure up to the promises or facts stated on the container or label because it was equipped with one or more defective vehicle systems/components.

192.   The Sienna was not of the same quality as those generally acceptable in the trade because it was sold with one or more defective vehicle systems/components which manifested as engine system defects and transmission/transaxle system defects, and other serious nonconformities to warranty.

193.   Upon information and belief, the defective vehicle systems and components were present at the time of Plaintiffs' purchase, extending the duration of any implied warranties.

194.   Plaintiffs are entitled to justifiably revoke acceptance of the Sienna under Cal. Civ. Code § 1794, *et seq*.

195.   Plaintiffs hereby revoke acceptance of the Subject Vehicle.

COMPLAINT FOR DAMAGES

196. Plaintiffs are entitled to reimbursement pursuant to Cal. Civ. Code § 1794, *et seq.*

197. Plaintiffs are entitled to rescission of the contract pursuant to Cal. Civ. Code § 1794, *et seq.* and California Commercial Code § 2711.

198. Plaintiffs are entitled to recover any incidental, consequential, and/or "cover" damages under California Commercial Code §§ 2711, 2712, and Cal. Civ. Code § 1794, *et seq.*

WHEREFORE, Plaintiffs pray for judgment against Defendant, as follows:

    a. For general, special and actual damages according to proof at trial in excess of $75,000;

    b. For rescission of the purchase contract and restitution of all monies expended;

    c. For diminution in value;

    d. For cover damages;

    e. For incidental and consequential damages according to proof at trial;

    f. For civil penalty in the amount of two times Plaintiffs' actual damages;

    g. For prejudgment interest at the legal rate;

    h. For reasonable attorney's fees and costs and expenses of suit; and

    i. For such other and further relief as the Court deems just and proper under the circumstances.

**COUNT III**
**VIOLATION OF SONG-BEVERLY**
**SECTION 1793.2(B)**

199. Plaintiffs repeat and re-allege each factual allegation above.

- 23 -
COMPLAINT FOR DAMAGES

200.    Pursuant to Cal. Civ. Code § 1793.2(a), a manufacturer that sells consumer goods in California, for which it has made an express warranty, shall maintain service and repair facilities or designate and authorize independent service and repair facilities to carry out the terms of those warranties.

201.    Pursuant to Cal. Civ. Code § 1793.2(b), when service and repair of goods is necessary because they do not conform with the applicable express warranties, service and repair shall be commenced within a reasonable time by the manufacturer or its representative.

202.    Cal. Civ. Code § 1793.2(b) further states that goods shall be serviced or repaired so as to conform to the applicable warranties within 30 days and/or within a reasonable time.

203.    Plaintiffs purchase of the Sienna was accompanied by express warranties, including a warranty guaranteeing that the Sienna was safe to drive and not equipped with defective parts.

204.    Plaintiffs delivered the Sienna to Defendant's authorized service representatives on multiple occasions.

205.    The Sienna was delivered for repairs of defects, which amount to nonconformities under the express warranties that accompanied its sale

206.    Defendant's authorized facilities did not conform the Sienna to its warranty and/or commence repairs within a reasonable time.

207.    Defendant has failed to tender the Sienna back to Plaintiffs in conformity with its warranties within the timeframes set forth in Cal. Civ. Code §1793.2(b).

COMPLAINT FOR DAMAGES

208.    Plaintiffs are entitled to justifiably revoke acceptance of the Sienna under Cal. Civ. Code § 1794, *et seq*;

209.    Plaintiffs hereby revoke acceptance of the Subject Vehicle.

210.    Plaintiffs are entitled to replacement or reimbursement pursuant to Cal. Civ. Code § 1794, *et seq.*

211.    Plaintiffs are entitled to rescission of the contract pursuant to Cal. Civ. Code § 1794, *et seq.* and California Commercial Code § 2711.

212.    Plaintiffs are entitled to recover any "cover" damages under California Commercial Code §§ 2711, 2712, and Cal. Civ. Code § 1794, *et seq.*

213.    Plaintiffs are entitled to recover all incidental and consequential damages pursuant to Cal. Civ. Code § 1794 *et seq.*, and California Commercial Code §§2711, 2712, and 2713 *et seq.*

214.    Plaintiffs are entitled in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages in that Defendant has willfully failed to comply with its responsibilities under Song-Beverly.

WHEREFORE, Plaintiffs pray for judgment against Defendant, as follows:

    a.   For general, special and actual damages according to proof at trial in excess of $75,000;

    b.   For rescission of the purchase contract and restitution of all monies expended;

    c.   For diminution in value;

    d.   For cover damages;

COMPLAINT FOR DAMAGES

e.  For incidental and consequential damages according to proof at trial;

f.  For civil penalty in the amount of two times Plaintiffs' actual damages;

g.  For prejudgment interest at the legal rate;

h.  For reasonable attorney's fees and costs and expenses of suit; and

i.  For such other and further relief as the Court deems just and proper under the circumstances.

## COUNT IV
## MMWA BREACH OF WRITTEN WARRANTY

215.  Plaintiffs repeat and re-allege each factual allegation above.

216.  Defendant is a supplier engaged in the business of making a consumer product directly available to Plaintiffs.

217.  Plaintiffs are purchasers of a consumer product who received the Sienna during the duration of a written warranty period applicable to it and who are entitled by the terms of the written warranty to enforce against Defendant the obligations of said warranty.

218.  Plaintiffs' purchase of the Sienna was accompanied by a written factory warranty for any defects in material or workmanship, comprising an undertaking in writing in connection with its purchase to repair or replace defective parts, or take other remedial action free of charge to Plaintiffs with respect to the Sienna in the event that it failed to meet the specifications set forth in Defendant's warranty.

219.  Defendant's warranty was the basis of the bargain of the contract between Plaintiffs and Defendant for the sale of the Sienna to Plaintiffs.

COMPLAINT FOR DAMAGES

220.   Plaintiffs' purchase of the Sienna was induced by the promises within Defendant's written warranty, which Plaintiffs relied on.

221.   Plaintiffs have met all obligations and preconditions as provided in Defendant's written warranty.

222.   As a direct and proximate result of Defendant's failure to comply with its written warranty, Plaintiffs have suffered damages.

223.   The MMWA is applicable to Plaintiffs Complaint in that the Sienna was manufactured and sold after July 4, 1975, and costs in excess of ten dollars ($10.00).

224.   Plaintiffs are entitled to bring suit for such damages and other legal and equitable relief pursuant § 2310(d) of the MMWA.

WHEREFORE, pursuant to 15 U.S.C. § 2310(d), Plaintiffs pray for relief and judgment, as follows:

a.   Adjudging that Defendant breached its written warranty;

b.   Allowing Plaintiffs to revoke acceptance of the Sienna and ordering a full refund;

c.   Awarding diminution in value damages;

d.   Awarding cover damages;

e.   Awarding incidental and consequential damages;

f.   Awarding Plaintiffs' reasonable attorneys' fees and costs incurred in this action;

g.   Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law;

- 27 -
COMPLAINT FOR DAMAGES

h. Awarding such other and further relief as the Court may deem just and proper.

## COUNT V
### MMWA BREACH OF IMPLIED WARRANTY

225. Plaintiffs repeat and re-allege each factual allegation above.

226. The Sienna was subject to an "implied warranty" of merchantability, as defined in 15 U.S.C. § 2301(7), running from Defendant to the intended consumers, Plaintiffs.

227. Defendant is a supplier of consumer goods as a person engaged in the business of making a consumer product directly available to Plaintiffs.

228. Defendant is prohibited from disclaiming or modifying any implied warranty when making a written warranty to the consumer or when Defendant has entered into a contract in writing within ninety (90) days from the date of purchase to perform services relating to the maintenance or repair of a motor vehicle like the Sienna.

229. Pursuant to 15 U.S.C. § 2308, the Sienna was impliedly warranted to be substantially free of defects in both material and workmanship, and thereby fit for the ordinary purpose for which it was intended.

230. The Sienna was warranted to pass without objection in the trade under the contract description and was required to conform to the descriptions contained in the contracts and labels.

231. The above-described defects and/or nonconformities in the Sienna render it unmerchantable and thereby not fit for the ordinary and essential purpose for which it was intended, and as represented by Defendant.

COMPLAINT FOR DAMAGES

232.    Plaintiffs are without the Sienna's reasonable value due to Defendant's breach of the implied warranty of merchantability.

233.    Plaintiffs have suffered and continue to suffer various damages due to Defendant's breach of the implied warranty of merchantability.

WHEREFORE, pursuant to 15 U.S.C. § 2310(d), Plaintiffs pray for relief and judgment, as follows:

a.    Adjudging that Defendant breached its implied warranty of merchantability;

b.    Allowing Plaintiffs to revoke acceptance of the Sienna and the return of all monies paid;

c.    Awarding diminution in value damages;

d.    Awarding cover damages;

e.    Awarding incidental and consequential damages;

f.    Awarding Plaintiffs' reasonable attorneys' fees and costs incurred in this action;

g.    Awarding Plaintiffs any pre-judgment and post-judgment interest as may be allowed under the law;

h.    Awarding such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY**

234.    Plaintiffs are entitled to and hereby demand a trial by jury for all causes so triable.

COMPLAINT FOR DAMAGES

Dated: July 22, 2026

Respectfully submitted,

/s/ Russell S. Thompson, IV
Russell S. Thompson, IV (SBN. 325944)
Thompson Consumer Law Group
11445 E Via Linda, Ste 2 #492
Scottsdale, AZ 85259
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com

Attorneys for Plaintiffs

- 1 -
COMPLAINT FOR DAMAGES